IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHELE RESEIGH,

    Plaintiff,

v.  No._____

FMS INVESTMENT CORPORATION,

    Defendant.

## COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

1. Defendant FMS Investment Corporation ("FMS"), wrongfully contacted third parties in connection with its attempts to collect a debt. During its communications with Plaintiff FMS and its representatives made false threats and other misrepresentations, including threatening to contact Plaintiff's employer if she did not pay the alleged debt. FMS regularly and deliberately violates the Fair Debt Collection Practices Act in this way.

2. Ms. Reseigh seeks damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the New Mexico Unfair Practices Act, NMSA 1978 § 57-12-1 *et seq.* ("UPA"), and for common law tortious debt collection.

## Jurisdiction

3. This Court has jurisdiction under the FDCPA, 15 U.S.C. § 1692k(d), and under 28 U.S.C. §§ 1331 & 1337. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

## Parties

4. Plaintiff Michele Reseigh ("Ms. Reseigh") resides in Albuquerque, New Mexico. She is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

5. Defendant FMS Investment Corporation ("FMS") is a foreign corporation whose principal business is the collection of consumer debts. It regularly collects or attempts to collect debts owed or due or asserted to be owed or due another. FMS is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

### Facts

6. Michele Reseigh incurred a financial obligation for primarily personal, family, or household purposes ("Account").

7. Ms. Reseigh allegedly defaulted on the Account.

8. After the Account was in default, the Account was placed with FMS to collect.

9. FMS telephoned Ms. Reseigh's parents in Colorado.

10. FMS left automated voicemail messages on Ms. Reseigh's parents telephone.

11. In response to FMS's voicemail messages, Ms. Reseigh's father, Mike Reseigh (Plaintiff's Father"), telephoned FMS.

12. Plaintiff's Father informed FMS that the telephone number that it had called was not Ms. Reseigh's telephone number.

13. Plaintiff's Father informed FMS that he did not know Ms. Reseigh's telephone number.

14. Plaintiff's Father requested that FMS stop calling him and Plaintiff's mother.

15. The FMS representative asked Plaintiff's Father if Ms. Reseigh's address was his Colorado address.

16. Plaintiff's Father informed FMS that his Colorado address was not Ms. Reseigh's address.

17. FMS did not honor Plaintiff's Father's request to stop calling

18. FMS continued to telephone Ms. Reseigh's parents repeatedly and left multiple voicemail messages.

19. Occasionally, Plaintiff's Father would telephone FMS in response to its voicemail messages.

20. Each time that Plaintiff's Father would telephone FMS, he would inform FMS that the telephone number that it had called was not Ms. Reseigh's telephone number.

21. Each time that Plaintiff's Father would telephone FMS, he requested that FMS stop calling him and Plaintiff's mother.

22. Each time that Plaintiff's Father would telephone FMS, he informed FMS that he did not know Ms. Reseigh's telephone number.

23. During at least one of the telephone calls, FMS requested that Plaintiff's Father deliver a message to Ms. Reseigh.

24. During one of the telephone calls, the FMS representative asked Plaintiff's father "what kind of relationship do you have with your daughter."

25. During one of the telephone calls, FMS disclosed that it sought to secure payment of a debt from Ms. Reseigh.

26. During at least one of the telephone conversations, FMS hung up on Plaintiff's father.

27. FMS telephoned Ms. Reseigh at her workplace.

28. During the telephone conversation Ms. Reseigh instructed FMS not to contact her at work.

29. On October 21, 2010, FMS telephoned Ms. Reseigh and left a voicemail message.

30. In the voicemail message, the FMS representative identified himself as "Dave Carcello."

31. In the voicemail message, FMS threatened to "fax something to [Ms. Reseigh's] payroll department."

32. In the voicemail message, FMS failed to provide the notice required by § 1692e(11).

33. On October 25, 2010, FMS telephoned Ms. Reseigh and left a voicemail message.

34. In the voicemail message, the FMS representative again identified himself as "Dave Carcello."

35. In the voicemail message, FMS threatened to "fax something to [Ms. Reseigh's] employer."

36. In the voicemail message, FMS failed to provide the notice required by § 1692e(11).

37. FMS had no legitimate reason to contact Ms. Reseigh's employer.

38. FMS had no legitimate reason to fax any documents to Ms. Reseigh's employer

39. FMS failed to disclose Plaintiff's rights pursuant to § 1692g(a).

## FMS Regularly Violates the FDCPA

40. FMS engages in a pattern and practice of violating the FDCPA by failing to provide consumer debtors with required disclosures and notices.

41. FMS regularly and deliberately makes false threats and other misrepresentations to consumer debtors, just as it did in this case.

42. Prior to the events that give rise to this Complaint, FMS had been sued numerous times in federal court for its false threats, but it persists, having decided it is more cost effective to settle the lawsuits than to change its practices.

## Damages

43. As a result of Defendant FMS's actions, Ms. Reseigh suffered actual damages, including:

    a. embarrassment and humiliation;

    b. aggravation and frustration;

    c. fear and apprehension;

    d. inconvenience;

    e. lost time; and

    f. lost privacy.

### First Claim for Relief: Violations of the FDCPA

44. FMS's actions violate the FDCPA, including 15 U.S.C. §§ 1692b, 1692c, 1692d, 1692e, 1692f, and 1692g.

45. Ms. Reseigh is entitled to recover statutory damages, actual damages and reasonable attorney fees and costs.

### Second Claim for Relief: Tortious Debt Collection

46. FMS's actions and omissions constitute unreasonable and tortious debt collection practices in violation of the doctrine enunciated by the New Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970).

47. Ms. Reseigh is entitled to recover actual and punitive damages in an amount to be determined at trial.

### Third Claim for Relief: Unfair Trade Practices

48. Defendant FMS is subject to the Unfair Practices Act for its conduct in New Mexico.

49. The foregoing actions of Defendant FMS constitute unfair or deceptive trade practices within the meaning of the New Mexico Unfair Practices Act, NMSA 1978 §57-12-2(D).

50. Defendant FMS willfully engaged in these unlawful trade practices.

51. Ms. Reseigh is entitled to recover actual or statutory damages, actual or statutory damages trebled, plus costs and reasonable attorney's fees.

52. Ms. Reseigh is entitled to injunctive relief to prevent irreparable injury that will result from continuing illegal collection activities by FMS.

### Request for Relief

Wherefore, Ms. Reseigh requests that this Court award:

A. Statutory and actual damages, for violations of the FDCPA;

B.	Actual and punitive damages, in an amount to be determined at trial, for tortious debt collection.

C.	Actual or statutory damages, trebled, for violations of the UPA;

D.	Reasonable attorney fees and costs;

E.	Injunctive relief, enjoining FMS from (1) threatening to contact third parties once it has communicated with a consumer debtor, (2) calling a third party when the third party has stated that it does not have contact information for the consumer debtor, and (3) contacting third parties when such person request that it cease communication.

F.	Such other relief as the Court deems just and proper.

Respectfully submitted,

FEFERMAN & WARREN, Attorneys for Plaintiff


__/S/ Charles Parnall_____
Charles Parnall
300 Central Ave., SW, Suite 2000 West
Albuquerque, New Mexico 87102
(505) 243-7773 phone
(505) 243-6663 fax